

FILED & ENTERED

FEB 10 2012

CLERK U.S. BANKRUPTCY COURT
Central District of California
BY sumlin    DEPUTY CLERK

# UNITED STATES BANKRUPTCY COURT
## CENTRAL DISTRICT OF CALIFORNIA
## LOS ANGELES DIVISION

| | |
|---|---|
| In re:<br><br>LA Slauson Swapmeet Inc.,<br><br><br><br><br><br>Debtor(s). | Case No.: 2:12-bk-10801-NB<br><br>CHAPTER 11<br><br>**MEMORANDUM DECISION GRANTING THE MOTIONS OF KAYLA PROPERTIES, LLC, ET. AL. FOR RELIEF FROM THE AUTOMATIC STAY**<br><br>Date:        February 7, 2012<br>Time:       10:00 AM<br>Courtroom: 1545 |

   At the above-referenced date and place, the Court held a hearing on the motion for relief from the automatic stay (Dkt 13) (the "Motion") of creditors Kayla Properties, LLC, Ethan 26, LLC, Leader Group Enterprises, LLC, Pacific Star Properties, LLC, Wall Street Enterprises, LLC and SSR, LLC (collectively, "Movants") in the above-captioned case of LA Slauson Swapmeet Inc. ("Swapmeet").  The Court simultaneously heard the nearly identical motion of Movants filed in the bankruptcy case of Debtor's principals, Michael and Sandra Yoon (the "Yoons" or, collectively with Swapmeet, "Debtors") (Case No. 2:12-bk-10787-NB, Dkt No. 16).  Appearances were as noted on the record.

   Debtor Swapmeet filed an Opposition to the Motion (Dkt 21); Movants filed a Reply (Dkt 26); and on February 6, 2012, Debtor Swapmeet filed a "Response" to the

-1-

Reply (Dkt 27). The Yoons did not file any opposition papers, but at the hearing on February 7, 2012, counsel for Debtors argued in opposition to all relief sought by Movants in both bankruptcy cases.

Based on the papers filed in support and in opposition to the Motion and the arguments presented at the hearing, and for the reasons set forth below, the Court will issue separate orders **GRANTING** the Motion against Debtor Swapmeet and **GRANTING** the parallel motion in the Yoons' bankruptcy case, in each instance with a 14-day stay pursuant to Fed. R. Bankr. P. 4001(a)(3).

### A.    Background

On April 21, 1986, the Yoons entered into a commercial lease agreement for 1600 W. Slauson Avenue, Los Angeles, California 90047 (the "Property"). *Motion*, ex. C. Subsequently, Movants acquired ownership of the Property and became the landlords. On March 9, 2009, a judgment was entered in the state court wherein Swapmeet was added as a lessee and the lease was extended to February 19, 2015. *Motion*, ex. D. Thus both Debtors are lessees under the lease; Movants are the lessors; and the lease has not yet reached its full term (although as set forth below the lease has been terminated).

Debtors did not make all required payments under the lease. Movants assert, and Debtors do not dispute, that on May 20, 2011, the California Superior Court entered a judgment in favor of Movants against Debtors in the amount of $371,365.21 for unpaid rents from January 2011-April 19, 2011 (the "May 20, 2011 Judgment"). *Supp. Decl. of Joseph Lavaei*, *Motion* at 10 ¶ 7. Movants assert that Debtors also failed to pay the entire rent from April 20, 2011 to July 29, 2011, in an amount of $319,910.80  *Id.* ¶ 9. In addition, Movants allege that Debtors have not paid rent from August 2011 to the present, including post-petition rent, at a rate of $115,103.84 per month (*Motion* at 7) and Debtors do not dispute these allegations, although they allege that they have offered to make payments in a lower monthly amounts.

Debtors assert that they are entitled to certain setoffs or claims against Movants,

both as to past-due amounts and as to ongoing rents under the lease.  As to past-due amounts, Debtors allege that they are entitled to setoffs of $389,584.33 for an award of attorneys' fees plus $21,954.08 in costs pursuant to a judgment of the California Superior Court dated March 9, 2009 (*see* Ex.D to Motion (Dkt 13) at 5) (the "March 9, 2009 Judgment") and, apparently in addition to those dollar amounts, $266,626.68 for 2009, $274,248.48 for 2010, and an "undetermined" amount for 2011 (collectively, the "Setoffs").  *Response*, at 5:11-15.  If all of these alleged historical Setoffs were credited – an issue addressed below – then it appears that the Setoffs might entirely eliminate the historical monetary defaults alleged by Movants.

As to setoffs for ongoing rents, Debtors assert that Movants owe them $10,000 per month for use of a parking lot owned by the Yoon Family Trust, plus another $24,245.84 per month for rents received by Movants from businesses located on the Yoon Family Trust's lot.  *Id.* at 5:10-11 and 5:16-18.  Those allegations were not made until Debtors' last-minute "Response," and perhaps for that reason Movants have not responded to them.

In sum, Debtors apparently dispute both the historical and ongoing amounts owed in connection with the lease.  The effect of these factual disputes is addressed below.

On July 29, 2011, Movants served a written three-day notice to pay or quit on Debtors. *Motion*, ex. B.  Movants acknowledge that on August 3, 2011, Debtors delivered several rent checks to Movants, but those checks did not constitute the entire amount owed and they were post-dated so that the checks could not be deposited until late October. *Supp. Decla. of Joseph Lavaei*, *Motion* at 10 ¶ 11.

On August 4, 2011, Movants filed a complaint for unlawful detainer against Debtors in the California Superior Court. *Motion*, ex. C.  It is not clear whether Debtors asserted their alleged Setoffs in that action but, as noted above, Debtors do not dispute that the May 20, 2011 Judgment was entered against them for $371,365.21 in unpaid rents from January 2011-April 19, 2011.

Debtors filed their voluntary bankruptcy petitions, on January 9, 2012.

**B.     Expiration of the Lease**

Movants argue that the lease expired pre-petition, and therefore Debtors cannot assume the lease under 11 U.S.C. § 365(b) because there is nothing to assume. *See generally In re Texscan Corp.,* 107 B.R. 227, 230 (9th Cir. B.A.P. 1989), *aff'd,* 976 F.2d 1269 (9th Cir. 1992) (holding that a contract that expires on its own terms before a § 365 motion is filed cannot be assumed). Movants have made a *prima facie* showing that this is so, for the reasons set forth below.

Section 13.2(a) of the lease provides that "[i]n the event of [a] material default or breach by Lessee, Lessor may at any time thereafter … [t]erminate Lessee's right to possession by any lawful means, in which case this Lease *shall terminate* and Lessee shall immediately surrender possession of the premises to Lessor." Lease (Ex.3 to *Motion*), PDF pp. 37-75, 59 (emphasis added). Movants assert that they did in fact terminate the Lease by sending a three-day notice to pay rent or quit, and the Lease supports that argument:

> The failure by Lessee to make any payment of rent . . . as and when due [constitutes a material default or breach sufficient to terminate the lease], where such failure shall continue for a period of three (3) days after written notice thereof from Lessor to Lessee. In the event that Lessor serves Lessee with a Notice to Pay Rent or Quit pursuant to applicable Unlawful Detainer statutes such Notice to Pay Rent or Quit shall also constitute the notice required by this subparagraph. [*Lease* § 13.1(b).]

As noted above, Movants served a written three-day notice to pay or quit on Debtors on July 29, 2011. On August 3, 2011, Debtors delivered several post-dated rent checks to Movants, but (1) the checks were not delivered until four days after the notice, and therefore were one day too late, (2) the checks were post-dated for payment in October of 2011, which is an alternative reason why they were too late, and (3) the checks did not amount to the total rent demanded. On this third point, it does not appear that Debtors can contest that at least some dollar amounts were past-due and therefore the lease was properly terminated. The May 20, 2011 Judgment awarded Movants $371,365.21 for unpaid rents from January 2011-April 19, 2011, so a

substantial monetary default existed to support the three-day notice to pay or quit. Debtors have not suggested any factual or legal reasons why that judgment would not be claim- and/or issue-preclusive as to the existence of a material default or breach sufficient to support the three-day notice and consequent termination of the lease.

For each of these three alternative reasons, Movants have made a *prima facie* showing that that lease was terminated pre-petition, and therefore cannot be assumed under 11 U.S.C. § 365. *See generally Miller & Starr Cal. Real Estate 3*d, § 19:205 (updated Sept. 2011) ("When the landlord has elected to terminate the tenancy, the tenant's right to cure expires if no tender of performance is made during the three-day period and the tenancy terminates after the expiration of the three-days provided in the notice.").

Debtors have not presented sufficient facts or legal argument to overcome Movants' *prima facie* showing. They offer no factual basis or theory of California law to establish that the three-day notice to pay or quit was void, or that Movants' termination of the lease was ineffective, or that the lease was somehow reinstated notwithstanding its termination. That alone is fatal to their opposition. In addition, Debtors offer no accounting to show that in fact they were current under the lease.

For all of these reasons it appears that the lease terminated pre-petition and therefore cannot be assumed by Debtors. That does not necessarily mean that the automatic stay must be terminated instantly, but it does mean that Debtors are holding over with no basis to occupy the Property other than bare possession and therefore the automatic stay presumably should be terminated without undue delay. *See generally In re Hernandez,* 287 B.R. 795, 807 (Bankr. D. Ariz. 2002) (when executory contract could not be assumed, there was no basis to prolong termination of the automatic stay through the end of the bankruptcy case, so the stay would be terminated without delay).

The Federal Rules of Bankruptcy Procedure establish a standard period of 14 days before relief from the automatic stay becomes effective, unless the Court orders otherwise. Fed. R. Bankr. P. 4001(a)(3). Debtors have not argued for any longer

period, and as set forth below they have not shown that they could provide adequate protection to Movants for any longer period. Therefore the standard 14 day period will be adopted by the Court.

### C.  Movants are Not Adequately Protected

Alternatively, supposing for the sake of discussion that the lease had not terminated pre-petition, Movants have met their *prima facie* burden to show that Debtors are unable to provide adequate protection to Movants. Debtors have not rebutted that showing.

The Motion indicates that the monthly rent for the subject property consists of $115,103.84 of base rent plus other costs, such as utilities (in dollar amounts that vary each month[1]), property taxes ($15,194.69/mo.), and insurance ($2,827.29/mo.). *See* Supp. Decl. of J. Lavaei, attached to Motion (Dkt 13), ¶ 16. Movants assert that Debtors cannot afford to pay those amounts. In support their assertion, Movants provide a copy of Michael Yoon's November 2, 2011 responses to Movant's special interrogatories sent in the subject state court action stating that Debtors "can only afford to pay [Movants] $75,000 per month just to break even." *Reply*, PDF p. 11:6-7.

In response Debtors assert that they are able to make payments in the amount of $76,416 per month plus an additional $16,667 per month to be paid toward arrearages. Response (Dkt 27) at 2:27-28. First, Debtors have not shown how they can afford an additional $16,667 when their prior discovery responses (in the California Superior Court action) state that they cannot afford any such additional amounts. Second, those combined dollar amounts are still far below the monthly rent required under the lease. Debtors argue that the lease is above the fair market rent, but the Bankruptcy Code requires payment at the lease rate, not a fair market rate. 11 U.S.C.365(d)(3); *see, e.g., In re At Home Corp.,* 392 F.3d 10641 1068 (9th Cir. 2004) (a "debtor must perform all obligations owing under a lease – particularly the obligation to pay rent at the contract

---

[1] Movants allege that utilities amounted to $56,158.41 for the period from August 2011 through January 2012. *See Motion* p.7, para. 5.c.3.

-6-

1 rate – until the lease is rejected"). Third, the declaration filed in support of Debtors'
2 arguments does not address the alleged Setoffs, nor does it offer Debtors' version of
3 any accounting, so Debtors have not overcome Movants' *prima facie* showing that
4 Debtors are incapable of making adequate protection payments.

5      For all of these reasons, on the present record there is not a sufficient basis to
6 find that Debtors can provide adequate protection. For this alternative reason, the
7 Motion will be granted as against Debtor Swapmeet, and the parallel motion in the
8 Yoons' bankruptcy case also will be granted, each subject to the 14-day stay provided
9 by Fed. R. Bankr. P. 4001(a)(3).

10      ###

DATED: February 10, 2012

_____
United States Bankruptcy Judge

-7-

**NOTE TO USERS OF THIS FORM**:
1) Attach this form to the last page of a proposed Order or Judgment. Do not file as a separate document.
2) The title of the judgment or order and all service information must be filled in by the party lodging the order.
3) **Category I.** below: The United States trustee and case trustee (if any) will always be in this category.
4) **Category II.** below: List ONLY addresses for debtor (and attorney), movant (or attorney) and person/entity (or attorney) who filed an opposition to the requested relief. DO NOT list an address if person/entity is listed in category I.

# NOTICE OF ENTERED ORDER AND SERVICE LIST

Notice is given by the court that a judgment or order entitled (*specify*) **_MEMORANDUM DECISION GRANTING THE MOTIONS OF KAYLA PROPERTIES, LLC, ET. AL. FOR RELIEF FROM THE AUTOMATIC STAY_** was entered on the date indicated as "Entered" on the first page of this judgment or order and will be served in the manner indicated below:

**I. SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF")** – Pursuant to controlling General Order(s) and Local Bankruptcy Rule(s), the foregoing document was served on the following person(s) by the court via NEF and hyperlink to the judgment or order. As of **_2/9/2012_**, the following person(s) are currently on the Electronic Mail Notice List for this bankruptcy case or adversary proceeding to receive NEF transmission at the email address(es) indicated below.

- Gene W Choe    maria@choicelaw.org
- Russell Clementson    russell.clementson@usdoj.gov
- Joseph A Eisenberg    jae@jmbm.com
- Alexis M McGinness    amm@jmbm.com, vr@jmbm.com;fc3@jmbm.com
- United States Trustee (LA)    ustpregion16.la.ecf@usdoj.gov

☐ Service information continued on attached page

**II. SERVED BY THE COURT VIA U.S. MAIL:** A copy of this notice and a true copy of this judgment or order was sent by United States Mail, first class, postage prepaid, to the following person(s) and/or entity(ies) at the address(es) indicated below:

**Debtor:**
LA Slauson Swapmeet Inc
1600 W Slauson Avenue
Los Angeles, CA 90047

☐ Service information continued on attached page

**III. TO BE SERVED BY THE LODGING PARTY**: Within 72 hours after receipt of a copy of this judgment or order which bears an "Entered" stamp, the party lodging the judgment or order will serve a complete copy bearing an "Entered" stamp by U.S. Mail, overnight mail, facsimile transmission or email and file a proof of service of the entered order on the following person(s) and/or entity(ies) at the address(es), facsimile transmission number(s), and/or email address(es) indicated below:

☐ Service information continued on attached page

---

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*August 2010*                    **F 9021-1.1.NOTICE.ENTERED.ORDER**